UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN LORENZO (A# 098-983-921), Petitioner, v. WARDEN, MESA VERDE DETENTION FACILITY, Respondent. | No. 1:26-cv-04805 DC SCR<br><br>ORDER AND<br>FINDINGS & RECOMMENDATIONS |

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

**FACTUAL AND PROCEDURAL HISTORY**

Petitioner is a citizen and national of Cuba who requested political asylum at the United States Border near Brownsville, Texas, on July 11, 2005, and was subsequently granted parole. ECF No. 7-1 at 3 (Form I-213). On May 28, 2024, Petitioner was convicted in Los Angeles County Superior Court of lewd acts with a child under 14 under Cal. Penal Code § 288(a) and sentenced to three years in prison. Id.; ECF No. 7-2 at 7 (FBI “rap sheet”). Immigration and Customs Enforcement (“ICE”) took Petitioner into custody on or around October 2, 2025, upon his release from state prison, and issued him a Notice to Appear administratively charging him as

deportable under 8 U.S.C. § 1227(a)(2)(A)(iii) based on the aggravated felony of sexual abuse of a minor (8 U.S.C. § 1101(a)(43)(A)). ECF No. 7-1 at 2. On July 15, 2026, an immigration judge ("IJ") ordered Petitioner removed. Petitioner's deadline to appeal was August 14, 2026.[1] See EOIR Case information page, https://acis.eoir.justice.gov/en/caseInformation. Petitioner is currently detained in the Mesa Verde Detention Facility within this judicial district.

Petitioner filed the instant § 2241 petition on June 23, 2026, challenging his ongoing, prolonged detention under the Due Process Clause of the Fifth Amendment. ECF No. 1. By way of relief, Petitioner seeks immediate release or, in the alternative, a bond hearing before an IJ where the government must establish by clear and convincing evidence that Petitioner is a danger or flight risk. Id. at 17. Respondent opposes the petition and asserts that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(B) on account of his 2024 conviction. ECF No. 7. Respondent further asserts that the petition should be dismissed for Petitioner's failure to exhaust his available administrative remedy of a hearing pursuant to Matter of Joseph, 22 I. & N. Dec. 799 (BIA 1999). Id.

## LEGAL STANDARDS

The Supreme Court has held that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause. The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews, 424 U.S. 319, applies. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th

[1] The undersigned takes judicial notice of Petitioner's EOIR case information. See Fed. R. Evid. 201(b)-(c).

Cir. 2022). Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at 335.

An as-applied challenge "contends that the law is unconstitutional as applied to the litigant's particular [circumstances], even though the law may be capable of valid application to others." Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998) (citation omitted).

## DISCUSSION

### I. Applicable Detention Statute

Respondent maintains Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1226(c). That provision states that the Attorney General "shall take into custody any [noncitizen] who" falls into one of the enumerated categories involving criminal offenses, § 1226(c)(1)(A)-(E), which includes any offense covered in section 1227(a)(2)(A)(iii). See 8 U.S.C. § 1226(c)(1)(B). It further specifies that the Attorney General "may release" such a noncitizen "only if the Attorney General decides" both that doing so is necessary for witness-protection purposes and that the noncitizen will not pose a danger or flight risk, § 1226(c)(2). Jennings v. Rodriguez, 583 U.S. 281, 303 (2018) (citing 8 U.S.C. § 1226(c)(2)) (emphasis in original).

Petitioner was charged with being removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) based on his conviction for lewd acts with a child under the age of 14 in violation of Cal. Penal Code § 288(a). See ECF No. 7-1 at 2. This offense is categorically an aggravated felony as defined by 8 U.S.C. § 1101(a)(43)(A). United States v. Flores, 901 F.3d 1150, 1154 (9th Cir. 2018), abrogated on other grounds as stated in Coria v. Garland, 114 F.4th 994 (9th Cir. 2024); see also United States v. Castro, 607 F.3d 566, 568 (9th Cir. 2010) (explaining that "a conviction under section 288(a) categorically constitutes 'sexual abuse of a minor[.]'"). Based on this conviction, Petitioner's detention—at least during the pre-final order stage of his removal proceedings—was governed by 8 U.S.C. § 1226(c)(1)(B).[2]

---

[2] Even if Petitioner was now subject to § 1226(c)(1)(B), he would not be required to exhaust administrative remedies via a Joseph hearing. A Joseph hearing allows an immigration detainee

Although neither Party raised this potential change in circumstances with the Court, the undersigned acknowledges that Petitioner's EOIR page now reflects that an IJ ordered him removed on July 15, 2026, and that the BIA did not receive an appeal by the deadline of August 14, 2026. Thus, it appears that Petitioner's detention has shifted to another mandatory detention statute, 8 U.S.C. § 1231(a)(1)-(2), when his removal order became administratively final following the expiration of the BIA appeal deadline. See 8 U.S.C. § 1231(a)(1)(B); Ocampo v. Holder, 629 F.3d 923, 926 (9th Cir. 2010) (noting that an order of removal becomes administratively final "only upon the earlier of (i) a BIA determination affirming the order or (ii) the expiration of the deadline to seek the BIA's review of the order") (citing 8 U.S.C. § 1101(a)(47)(B)). Pursuant to § 1231(a)(1)-(2), detention is mandatory during the 90-day "removal period" following the entry of a final order of removal.

Despite the apparent shift in statutory authority, Petitioner is subjected to detention that has become prolonged. The Ninth Circuit has referred to detention longer than six months as prolonged "in the context of detentions for which no individualized bond hearings had taken place at all because the statutes on their faces did not allow for them." Rodriguez Diaz, 53 F.4th at 1207 (citations omitted). Other district courts have found mandatory detention of similar lengths without a fair detention hearing to violate due process. See Chen v. Aitken, 917 F. Supp. 2d 1013, 1018 (N.D. Cal. 2013) (holding petitioner's seven-month detention under § 1225(b) was "prolonged" because it "has lasted well beyond the typical period described in Demore [v. Kim, 538 U.S. 510 (2003)]" and "neither release nor removal are imminent"); Cabral v. Decker, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018) (noting that petitioner's seven-month detention under § 1226(c) was "within the range . . . sufficient to show a due process violation"). The prolonged

---

to challenge whether he is "covered by § 1226(c)," Demore v. Kim, 538 U.S. 510, 514 n.3 (2003), but here the petition assumes Petitioner is subject to mandatory detention and lacks a statutory right to a bond hearing. See ECF No. 1 at 5, ¶¶ 20-21. In other words, a Joseph hearing would not provide Petitioner with the relief from prolonged, mandatory detention that he seeks through his petition. See Solorzano-Ramirez v. Warden, California City Det. Facility, No. 1:26-CV-2540 DC CSK, 2026 WL 1257256, at *2 (E.D. Cal. May 7, 2026), report and recommendation adopted, No. 1:26-CV-02540-DC-CSK (HC), 2026 WL 2324305 (E.D. Cal. Aug. 11, 2026) (finding the petitioner was not required to pursue a Joseph hearing where his petition challenged his prolonged detention under the Due Process Clause of the Fifth Amendment).

nature of Petitioner's detention gives rise to an as-applied constitutional challenge to that detention.

In reaching this conclusion, the undersigned finds persuasive the reasoning in Doe v. Becerra, 697 F.Supp.3d 937 (N.D. Cal. 2023), which involved a habeas petitioner subject to detention under § 1231(a)(2) after a prolonged period of earlier detention. As the Court in Doe found, "[t]he IJ's final order of removal may have started a new clock for the Government to take a different type of action, but it did not reset the clock as to the time Doe has been detained without a bond hearing." 697 F.Supp.3d at 943. In the instant case, that the entirety of Petitioner's ten-plus months of detention passed without a determination of whether he is a flight risk or a danger to the community establishes the basis for his as-applied challenge to ongoing detention. "While statutory justification for [Petitioner's] detention has shifted, nothing has changed as a practical matter – h[is] time behind bars continues to increase without any showing by Respondents that h[is] civil detention is necessary to achieve the Government's non-punitive ends." Doe, 697 F.Supp.3d at 943.

This case is also distinguishable from Khotesouvan v. Morones, 386 F. 3d 1298 (9th Cir. 2004), because Petitioner had already been detained for about ten months at the time his detention appeared to shift to § 1231(a). The petitioners in Khotesouvan filed their petitions during the 90-day removal period and had only been detained by immigration officials for around two months. In that circumstance, the Ninth Circuit held that their detention could not be challenged until at least the 90-day removal period had passed. Id. While Khotesouvan may preclude habeas petitioners from seeking immediate release under Zadvydas during the 90-day removal period, based on the total length of Petitioner's detention, Khotesouvan does not preclude other relief.

In sum, as in other statutory contexts where a noncitizen is subjected to prolonged, mandatory detention, Petitioner may invoke due process protections on an as-applied basis. Accordingly, the undersigned proceeds to the due process analysis.

## II. Due Process Analysis

Given the length of Petitioner's detention without a bond hearing and the ongoing mandatory nature of his detention under § 1231(a)(2), the undersigned concludes that he has a

protected liberty interest. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. The Court therefore proceeds to apply the due process framework in Mathews v. Eldridge.

Turning to the first factor in Mathews, Petitioner has a strong liberty interest in avoiding prolonged detention. An individual's private interest in "freedom from prolonged detention" is "unquestionably substantial." Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011). At this point in the proceedings, Petitioner has been detained for over nine months. The Ninth Circuit has previously referred to detention of longer than six months as prolonged "in the context of detentions for which no individualized bond hearings had taken place at all because the statutes on their faces did not allow for them." Rodriguez Diaz, 53 F.4th at 1207 (citations omitted). Thus, this factor tilts in Petitioner's favor.

The Court turns to the second Mathews factor, which addresses whether there is a risk of an erroneous deprivation to that liberty interest. In this case, it is undisputed that Petitioner has not received a bonding hearing at any point during the over nine months of his detention to date. "In the absence of any meaningful initial procedural safeguards, it appears to us that almost *any* additional procedural safeguards at some point in the detention would add value." Black v. Decker, 103 F.4th 133, 153 (2d Cir. 2024) (emphasis in original); see also Jimenez v. Wolf, No. 19-cv-7996 NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020) (finding "high" risk of an erroneous deprivation where petitioner had not received any bond or custody redetermination hearing during his one-year of mandatory, pre-removal detention). Accordingly, the undersigned finds that the second Mathews factor also favors Petitioner.

Under the final Mathews factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." Mathews, 424 U.S. at 335. The government has a strong interest in seeking to remove noncitizens during the 90-day removal period. "[H]owever, the key government interest at stake here is not the continued detention of Petitioner, but the government's ability to detain h[er] without a bond hearing." Maksim v. Annex, No. 1:25-CV-

00955-SKO (HC), 2025 WL 2879328, at *5 (E.D. Cal. Oct. 9, 2025) (internal quotation and citation omitted). Should Respondent believe Petitioner's criminal history renders him a danger risk, the IJ is best suited to make that determination. "After all, the purpose of a bond hearing is to inquire whether the [noncitizen] represents a flight risk or danger to the community." Jimenez, 2020 WL 510347, at *3 (citing In re Guerra, 24 I. & N. Dec. 37 (B.I.A. 2006)). Further, any fiscal or administrative burden that would result from providing Petitioner with a bond hearing before an IJ is "minimal." See Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025). In sum, this factor favors Petitioner.

In light of this analysis, the undersigned recommends that the petition for a writ of habeas corpus be granted on its sole due process challenge to Petitioner's prolonged detention. Because Petitioner appears within § 1231(a)'s 90-day removal period, the appropriate remedy is not immediate release, but an individualized bond hearing before a neutral decision-maker at which the government bears the burden of justifying continued detention. See Doe, 697 F. Supp. 3d at 945-48 (holding due process required a bond hearing before an IJ in which government bears the burden where petitioner was within the 90-day removal period but had already been detained for a prolonged period of time). At the bond hearing, "the government must prove by clear and convincing evidence that" Petitioner "is a flight risk or a danger to the community to justify denial of bond," because "civil commitment for any purpose constitutes a significant deprivation of liberty." Singh, 638 F.3d at 1203-04; Doe, 697 F. Supp. 3d at 947-48 (adopting reasoning of Singh in context substantially identical to this case); see also Singh v. Albarran, No. 1:26-cv-0940 DC DMC (HC), 2026 WL 392169, at *5 (E.D. Cal. Feb. 12, 2026) (collecting cases).

**CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that Petitioner's motion to proceed in forma pauperis (ECF No. 2) be DENIED based on his payment of the filing fee and motion to appoint counsel (ECF No. 3) be DENIED as moot.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus (ECF No. 1) be GRANTED.
2. Respondent be ordered to provide Petitioner Ruben Lorenzo (A# 098-983-921)

with a bond hearing before an immigration judge at which the government shall bear the burden of justifying Petitioner's continued detention by clear and convincing evidence, within fourteen (14) days from any order resolving the § 2241 petition.

3. Respondent be further required to provide seven (7) days advance written notice of the bond hearing date to Petitioner as well as any immigration counsel of record for Petitioner.

4. Respondent be further directed to file a notice certifying compliance with the above provision within seven (7) days from the date of the bond hearing.

5. If petitioner is granted release on bond, respondent shall return all of petitioner's documents and possessions at the time of release.

6. Judgement be entered in petitioner's favor and this case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 18, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE